UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRISTOL WEST INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) Docket No. 07-cv-199-GZS |
| v. | ) ) |
| MELANIE LANDRY and ROLLIN H. SMALL, JR., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| WAWANESA MUTUAL INSURANCE COMPANY, | ) ) ) |
| Intervenor. | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are two motions for summary judgment: Motion for Summary Judgment of Intervenor Wawanesa Mutual Insurance Company (Docket # 30) and Plaintiff's Motion for Summary Judgment (Docket # 32). As explained herein, the Court GRANTS Plaintiff's Motion for Summary Judgment (Docket # 32) and DENIES Wawanesa's Motion for Summary Judgment (Docket # 30).

**I.      SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Santoni v. Potter, 369 F.3d 594, 598 (1st Cir.

2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. See Santoni, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

The filing of cross-motions for summary judgment does not alter this standard. See Leahy v. Raytheon Co., 315 F.3d 11, 17 n.5 (1st Cir. 2002); Blackie v. State of Me., 75 F.3d 716, 721 (1st Cir. 1996). In fact, summary judgment is appropriate where, as here, the Court must "determine the content of foreign law." Access Telecom, Inc. v.

MCI Telecommunications Corp., 197 F.3d 694, 713 (5th Cir. 1999); see also Fed.R.Civ.P. 44.1 ("The court's determination [of foreign law] must be treated as a ruling on a question of law.").

## II.   FACTUAL BACKGROUND

This declaratory judgment action arises from an automobile accident, and the parties' disagreement about the liability insurance limit applicable to that accident. To resolve this disagreement, the Court must determine whether foreign law triggered an expansion of the insurance policy issued to Defendant Melanie Landry ("Landry") by Plaintiff Bristol West Insurance Company ("Bristol West").

The underlying facts in this case are undisputed.[1] Bristol West issued to Landry insurance policy number G000173103 for the policy period November 20, 2003 to May 20, 2004 (the "Bristol West policy"). (See Intervenor's Statement of Material Facts ("Intervenor's SMF") (Docket # 31) ¶ 1.) On or about November 28, 2003, Landry was involved in a car accident in the Canadian Province of New Brunswick with Keith Savoie ("Savoie"). Consequently, Savoie filed suit against Landry and Defendant Rollin H. Small, Jr. ("Small")[2] in the Court of Queen's Bench of New Brunswick, Judicial District of Saint John. Savoie also filed an action against Wawanesa Mutual Insurance Company ("Wawanesa"), which issued an insurance policy to Savoie's father, under an SEF 44 underinsured motorist policy.[3]

---

[1] Based on the Court's determination that Plaintiff is entitled to summary judgment, the Court's description of the facts resolves any factual disputes and makes all rational inferences in favor of Defendants and Intervenor. See Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).

[2] Small owned the vehicle driven by Landry. (Pl.'s Mot. for Summ. J. (Docket # 32) at 2.)

[3] Savoie's action against Wawanesa seeks damages that he is unable to recover from Landry and Small, and is currently pending in the Court of Queen's Bench of New Brunswick, Trial Division, Judicial District of

The Bristol West policy contains a liability insurance limit of $50,000 (U.S.) per person. (Compl. (Docket # 1) ¶ 10.) It also contains an "Out of State Coverage" provision, which provides in relevant part:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged,[4] we will interpret your policy for that accident as follows:
>
> A. If the state or province has:
>
>   1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
>   2. A compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

(Intervenor's SMF ¶ 2.)

New Brunswick, the site of the accident, has both financial responsibility and compulsory insurance[5] laws which, under certain circumstances, require a minimum liability insurance limit of $200,000 (Can.). See generally R.S.N.B. 1973, c. M-17 et seq. In relevant part, the New Brunswick Financial Responsibility law ("NBFRL") provides that:

> proof of financial responsibility in the amount of at least two hundred thousand dollars, exclusive of interest and costs, against loss or damage resulting from bodily injury to or the death of one or more persons and loss of or damage to property in any one accident shall be given by each

---

Saint John. (Intervenor's SMF ¶¶ 7 & 8.) As a result, the Court granted Wawanesa's Motion to Intervene in this action. (See Docket #s 8 & 14.)

[4] Landry's car was principally garaged in the State of Maine. (Intervenor's SMF ¶ 4.)

[5] Although their initial pleadings reference New Brunswick's compulsory insurance laws, all parties now agree that because those laws do not extend to non-residents, they, and Out of State Coverage clause A.2, are irrelevant. (See Wawanesa's Opp'n to Pl.'s Mot. for Summ. J. (Docket # 37) at 3 n.3; Defs.' Objection to Pl.'s Mot. for Summ. J (Docket # 39) at 7; Pl.'s Reply (Docket # 40) at 1.) See also R.S.N.B. 1973, c. M-17, § 46(1). Thus, this controversy is covered by clause A.1 only.

>driver and in the case of an owner, by each owner, for each motor vehicle registered in his name, <u>to whom this Part applies</u>.

<u>See</u> R.S.N.B. 1973, c. M-17 § 282 (emphasis added). Other sections of the statute specify to whom this requirement applies, and in what circumstances. <u>See, e.g.</u>, <u>id.</u> §§ 276(1) (unsatisfied judgment for damages on account of bodily injury or property damage in excess of $1,000 (Can.) "occasioned by a motor vehicle" triggers suspension of motor vehicle privileges, which may be reinstated upon furnishing proof of financial responsibility), 281(1) (motor vehicle accident causing bodily injury or property damage in excess of $1,000 (Can.) triggers suspension of motor vehicle privileges, which may be reinstated upon furnishing proof of financial responsibility).

In effect, the parties dispute whether these provisions apply retrospectively to claims arising out of Landry's accident with Savoie, or only prospectively to any future accident. Defendants rely on a letter sent by Bristol West to Landry, in which Claims Analyst Curtis Lemmerbrock indicated that Landry's available coverage increased to $200,000 (Can.). The letter explained:

>Your policy, policy number G00-0173103-00-17, issued to Melanie Landry, provides the following coverage:
>
>>Bodily Injury: *$50,000 per person, $100,000 per accident*
>
>However, since this accident happened in Canada, your policy limits automatically deem to the minimum amounts of liability limits as outlined via Canadian law, which is $200,000CA per person.

(Ex. 1 to Defs.' Obj. to Pl.'s Mot. for Summ. J (Docket # 39-2).)

Bristol West asserts that this was simply an "erroneous statement" made "in ignorance of applicable law," whereas Defendants contend that the letter reflects a correct interpretation of the applicable law and/or "an admission" by Bristol West. (<u>See</u> Pl.'s

5

Mot. for Summ. J. (Docket #32) at 4 n.1; Defs.' Obj. to Pl.'s Mot. for Summ. J (Docket # 39) at 6.)

### III. DISCUSSION

#### A. The Bristol West Policy

Before considering the relationship between the Bristol West policy and New Brunswick law, the Court must first examine the language of the policy itself. [6] The meaning of language in an insurance contract "is a question of law." Foremost Ins. Co. v. Levesque, 868 A.2d 244, 246 (Me. 2005). The Bristol West policy, like all insurance contracts, must be construed in accordance with the intention of the parties. See Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 87 (1st Cir. 2002); Pine Ridge Realty, Inc. v. Massachusetts Bay Ins. Co., 752 A.2d 595, 601 (Me. 2000). In seeking to determine the intention of the parties, the Court must consider "the language of the agreement viewed in the light of all the circumstances under which it was made. . . . Such intention must be gathered from the written instrument, construed in respect to the subject matter, the motive and purpose of making the agreement, and the object to be accomplished." Hodgkins v. New England Tel. Co., 82 F.3d 1226, 1230 (1st Cir. 1996) (citing Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 919 (Me. 1983) (overruled on other grounds)). Finally, although Wawanesa concedes that the relevant policy provision is unambiguous,[7] the Court notes that any ambiguities "must be resolved against the insurer and in favor of coverage." Foremost Ins. Co., 868 A.2d at 246.

---

[6] The Court has not been provided with a complete copy of the Bristol West policy and thus cannot determine whether it contains a choice of law provision. Nonetheless, all parties agree that Maine law governs, and the Court's analysis proceeds in light of this agreement.

[7] Although Wawanesa claims no ambiguity, Defendants suggest, without elaboration, the possibility that the phrase "financial responsibility or similar law" in clause A.1 is ambiguous. (See Wawanesa's Mot. for Summ. J. (Docket # 30) at 5; Defs.' Objection to Pl.'s Mot. for Summ. J (Docket # 39) at 6.) As the

6

Wawanesa appeals to "the clear and unambiguous language" of clause A.1. (Wawanesa's Opp'n to Pl.'s Mot. for Summ. J. (Docket # 37) at 2.)  Specifically, it observes that New Brunswick simply "has" a financial responsibility law "specifying limits of liability . . . higher than the limit shown in the Declarations."  The mere existence of that statute, Wawanesa asserts, triggers clause A.1 and mandates the higher liability insurance limit of $200,000 (Can.).

In advancing this interpretation, Wawanesa plainly relies on the same "dictionary definition" approach rejected in an analogous case.  de los Reyes v. Travelers Ins. Co., 553 N.E.2d 301, 303 (Ill. 1990).  In de los Reyes, the Supreme Court of Illinois concluded that "the reasonable construction" of an identical insurance policy was "that an insured subject to the provisions of the financial responsibility laws of any State would be provided coverage up to the minimum amount of required financial responsibility specified in the statute." Id. at 304 (emphasis added); see also 1 Auto. Liability Ins. § 1:3 (4th ed. 2008) ("The purpose of this type of extraterritorial coverage is to interpose higher limits into a policy . . . if the insured, as a nonresident, is required to maintain such insurance").

This Court finds that the most reasonable construction of clause A.1 is that it provides increased liability coverage to the extent required by a financial responsibility law to which the insured is subject.  Wawanesa's contrary interpretation does not reflect the parties' "motive and purpose of making the agreement, and the object to be

---

Court's later discussion makes clear, to the extent ambiguity exists, it concerns the proper interpretation and application of the NBFRL, not the phrase "financial responsibility or similar law" in clause A.1. Because the Court finds that clause A.1 is not "reasonably susceptible of different interpretations" and is therefore unambiguous as a matter of law, it does not consider extrinsic evidence to construe the policy's terms, including the letter sent by Lemmerbrock to Landry. Jipson v. Liberty Mut. Fire Ins. Co., 942 A.2d 1213, 1216 (Me. 2008); see also T-M Oil Co., Inc. v. Pasquale, 388 A.2d 82, 85 (Me. 1978) (noting that the factfinder may consider extrinsic evidence only when "contract language is ambiguous and that ambiguity does not disappear when examined in the context of the other provisions in the instrument").

accomplished": namely, to insure Landry in the event a financial responsibility law requires her specifically to maintain a higher level of insurance or other security. See Hodgkins, 82 F.3d at 1230. In fact, Wawanesa's reading "would convert the financial responsibility provision of the policy into a compulsory insurance provision" applicable to all drivers, which the parties surely did not intend. de los Reyes, 553 N.E.2d at 304; see also Pine Ridge Realty, Inc., 752 A.2d at 601 (noting that courts will not interpret even an ambiguous insurance contract "to provide coverage that was never contemplated by the parties.").

Thus, clause A.1 increases the applicable liability limit only to the extent required of Landry by the NBFRL.

### B. New Brunswick Financial Responsibility Law

Traditional motor vehicle financial responsibility laws demand proof of insurance or other forms of financial responsibility "after an accident has occurred." 16 Williston on Contracts § 49:33 (4th ed. 2008); see also 7A Couch on Ins. § 109:1 ("A Compulsory Insurance Law must be distinguished from a Financial Responsibility Law which is applicable after a person has been involved in an accident."). Indeed, the requirements of the NBFRL are triggered by a motor vehicle accident causing bodily injury or property damage in excess of $1,000 (Can.).[8] See R.S.N.B. 1973, c. M-17, § 281(1). The consequence of failure to provide proof of financial responsibility is suspension of the owner's and/or driver's motor vehicle privileges, although a non-resident owner is permitted to remove the motor vehicle from New Brunswick. See id. Thus, as a result of her accident with Savoie, Landry must provide proof of financial responsibility in the

---

[8] The requirements of the NBFRL are also triggered by an unsatisfied judgment for damages on account of bodily injury or property damage in excess of $1,000 (Can.) "occasioned by a motor vehicle . . . ." See R.S.N.B. 1973, c. M-17, § 276(1).

amount of at least $200,000 (Can.) to retain motor vehicle privileges in New Brunswick. See id. §§ 281(5), 282.

However, the parties disagree as to whether that requirement increases the liability insurance limit applicable to Landry's accident with Savoie. Defendants and Intervenor assert that the NBFRL operates retrospectively, and that the proof of financial responsibility demanded acts as security for past accidents (including the insured's first accident). Conversely, Plaintiff contends that the NBFRL operates prospectively, and that the proof demanded acts solely as proof of financial responsibility for future accidents.

This distinction proves dispositive. Financial responsibility laws that demand security for past accidents increase the liability limit as to the insured's first accident. See, e.g., Keane v. Auto-Owners Ins. Co., 464 N.W.2d 830, 836-37 (Wis. 1991); Amrick v. Liberty Mutual Ins. Co., 455 A.2d 793, 794-96 (R.I. 1983). Laws that demand proof of financial responsibility solely for future accidents do not. See, e.g., Novak v. State Farm Mutual Auto. Ins. Co., 293 N.W.2d 452, 454 (S.D. 1980); de los Reyes, 553 N.E.2d at 303.

The Court is persuaded that the NBFRL operates prospectively.[9] First, the NBFRL clearly states that any proof of financial responsibility provided "shall be held as

---

[9] In reaching this conclusion, the Court has reviewed the affidavits submitted by Wawanesa and conducted independent research and analysis to determine the content of the NBFRL. (See Aff. of Lucie Richard (Docket # 31-2) and Supp. Aff. of Lucie Richard (Docket # 38-2).) This process accords with the Federal Rules regarding the determination of foreign law. See Fed.R.Civ.P. 44.1 (the Court may consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). Notably, "[e]xpert testimony is no longer an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities." Curtis v. Beatrice Foods Co., 481 F.Supp. 1275, 1285 (S.D.N.Y. 1980); see also Carlisle Ventures, Inc. v. Banco Espanol de Credito, 176 F.3d 601, 604 (2d Cir. 1999) (discounting affidavit that contained scant legal authority).

security for any judgment against the owner or driver . . . in any action arising out of injury or damage caused <u>after the filing or deposit</u> . . . ." R.S.N.B. 1973, c. M-17, § 284(1) (emphasis added); <u>see also</u> <u>id.</u> § 284(2) (such proof "shall not be subject to any claim or demand, except an execution on a judgment for damages, for personal injuries, or death, or injury to property, occurring after such deposit, as a result of the operation of a motor vehicle."). In this respect, the NBFRL mirrors the South Dakota and Indiana statutes considered in <u>Novak</u> and <u>de los Reyes</u>. <u>See</u> <u>Novak</u>, 293 N.W.2d at 454; <u>de los Reyes</u>, 553 N.E.2d at 303. Moreover, the NBFRL permits a judgment debtor to request the privilege of paying a judgment creditor in installment payments. <u>See</u> R.S.N.B. 1973, c. M-17, § 285. If the court grants permission, the judgment debtor's motor vehicle privileges may be reinstated "upon filing proof of financial responsibility for <u>future</u> accidents." <u>Id.</u> (emphasis added).

Second, unlike the Wisconsin statute in <u>Keane</u>, the NBFRL contains no section pertaining to "Security for Past Accidents." <u>Keane</u>, 464 N.W.2d at 833. Nor does the NBFRL permit the use of the required proof of financial responsibility as security "for payment of any settlement agreement or judgment for damages arising from the accident," unlike the Rhode Island statute in <u>Amrick</u>. <u>See</u> <u>Amrick</u>, 455 A.2d at 795. Again, the NBFRL insists on just the opposite. <u>See</u> R.S.N.B. 1973, c. M-17, §§ 284(1)-(2).

Traditionally, the requirements of financial responsibility laws "apply only after the operator of a vehicle has been involved in one accident and only to accidents which occur after the effective date of the requirement of proof . . . ." 7A Couch on Ins. § 109:34. The NBFRL accords with these basic principles.

The Court finds that the proof of financial responsibility required of Landry by the NBFRL applies to future accidents only. As a result, no financial responsibility law specified increased limits of liability, within the meaning of "Out of State Coverage" clause A.1, as to Landry's accident with Savoie. Therefore, the liability limit applicable to that accident is expressly capped at $50,000 (U.S.). Finding no genuine issue of material fact and having resolved the legal issues presented in favor of Plaintiff, the Court GRANTS summary judgment in favor of Plaintiff.

### IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion for Summary Judgment (Docket # 32) is hereby GRANTED, and that Intervenor's Motion for Summary Judgment (Docket #30) is hereby DENIED.

In accordance with these rulings, Judgment shall be entered in favor of Plaintiff as to all of its asserted claims.[10]

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 18th day of September, 2008.

---

[10] Defendants previously consented to the Court's DISMISSAL of their filed Counterclaim under Maine's Unfair Claims Settlement Practices Act, in light of the parties' stipulation. (See Answer (Docket # 11) at 1-2; Defs.' Obj. to Pl.'s Mot. for Summ. J. (Docket # 39) at 7.)